(No. 6969.   December 5, 1941)

ROBERT P. DOBBS, Employee, Respondent, v. BUREAU OF HIGHWAYS, State of Idaho, Employer, and STATE INSURANCE FUND, Surety, Appellants.

(120 Pac. (2d) 263)

Rehearing denied January 7, 1942.

Frank L. Benson, for Appellants.

Verner R. Clements and E. B. Smith, for Respondent.

GIVENS, J.—October 19, 1940, notice of injury to respondent was given the board by respondent, stating he was a rock crusher operator and the accident happened by "Dust from Rock Crushing operations has affected his right lung." His employer detailed he was disabled in running a rock crusher. The attending physician gave his diagnosis as follows: "Silicosis with superimposed Tuberculosis, findings are based on X-Ray's and Speutum specimen and history of being employed in dust of rock crusher for the past two years."

In his application for hearing respondent alleged as follows:

"VII.  That the combined silicosis and tuberculosis of claimant's lungs aforesaid caused the claimant to become totally disabled commencing as of October 19, 1940 and ever since said time he has been and now is, and will continue to be for a period unknown at this time, totally dis-

abled for work; that ever since January 21, 1941 claimant has been confined in a hospital and is confined to his bed on account of said combined silicosis and tuberculosis of his lungs, particularly of the right lung; that claimant has incurred and will be compelled to incur expenses for necessary medical treatment and hospitalization and for drugs, medicines and nursing services in amounts yet to be determined.

"VIII. That the work performed by claimant for said employer during the period alleged in Paragraph I hereof was in the counties of Nez Perce, Latah, Clearwater, Idaho and Lewis in the State of Idaho, the last work being performed in Lewis County, Idaho."

Appellants resisted the imposition of compensation on the ground that no proper notice had been given in time, and that the proceedings were barred by section 43-1202, contending in substance that respondent was not even entitled to recover under the occupational disease statute, 1939 Session Laws, Chapter 161, because he had not been subject to conditions conducive to silicosis for a sufficient length of time to entitle him to compensation thereunder.

The evidence before the board showed without dispute that respondent had been in the navy 1921-2 as a fireman on a battleship; that thereafter he followed construction work, work in a sawmill, trucking, timber industry, and highway work until about 1938, when he entered the employ of appellant as a rock crusher operator and continued until October 19, 1940, and is now bedridden with pulmonary tuberculosis; that prior to his present affliction he had not been ill other than suffering from usual childhood diseases; that he had a bad cough in 1935 which persisted until the present time.

The pertinent medical evidence which must determine the case is as follows:

"A. My opinion is the man had tuberculosis and it was aggravated by the dust. That is the only way I can figure it out. I can't give the exact date of the tuberculosis but from the explanation of his exposure it is apparently an old thing and it has been aggravated and become worse because of the work the man has done.

Q. It precipitated his condition into total disability at this time?

A. That is right .

\*     \*     \*     \*     \*     \*     \*     \*     \*

Q. From that history that was related to you in the hypothetical question, would the fact that claimant's mother had been tubercular have any bearing on this question?

A. I don't believe so. The man passed a naval examination and he would not have gotten by the navy if he had had it. They say there is a tendency to tuberculosis but he passed a naval examination in 1921 and he would have had it by that time." [Dr. Baldeck.]

"Q. Doctor, handing you claimant's exhibits, numbers 5 and 6, being stereo views taken by Dr. George H. Anderson of Spokane on November third, 1940, will you kindly indicate what type the X-rays are, and how you have made an examination of them, and what they show?

A. These are stereo films of the chest, taken by Drs. Ward, Harris and Addington on November 30, 1940. These films were examined by me in the stereoscope up stairs this morning—a few minutes ago, and I find that the right apex is obscured by a heavy infiltration, indicative of tuberculosis. The left apex shows some infiltration to a lesser degree, and an old lesion of more intense opacity, well circumscribed. There is some mottling extending throughout each lung field, more especially on the right. I would say in conclusion, that this film shows an advanced condition of bilateral pulmonary tuberculosis.

\*     \*     \*     \*     \*     \*     \*     \*     \*

Q. Doctor, from your examination of the X-rays, being claimant's exhibits four to seven, inclusive, and from the history which I have just related to you, have you an opinion as to the cause of Mr. Dobbs' affliction?

A. Yes.

Q. Will you state that opinion?

A. I feel that the cause of his disability is that of tuberculosis of the lungs.

\*     \*     \*     \*     \*     \*     \*     \*     \*

Q. Do you have an opinion as to the effect of having breathed (that is of Dobbs' having breathed) the rock dust containing a high percentage of free silican dioxide, taking into consideration the old tubercular lesion which you state the X-rays showed to be present?

A. Yes.

Q. Doctor, I will ask you what your opinion is.

A. My opinion is that the chemical analysis has not given us the points that we would need at all, excepting from the standpoint of the irritation of any dust, I would say that in all probability it aggravated his tuberculosis. I wouldn't have any opinion as to the amount of silica there, because the X-ray does not show the evidence of the inhalation of fine silica particles, but the result, in the formation of scar tissue. In his testimony there where he coughed up dust, that isn't evidence of silicosis, because it might have been any kind of dust. I also feel that any inhalation of dust in his occupation would be worse, than if he had not been working someplace where he was exposed to dust, but I think working at all aggravated his condition.

\*     \*     \*     \*     \*     \*     \*     \*     \*

Q. In view of the history as has been given to you, doctor, and assuming it as correct, have you an opinion as to whether or not the claimant has had active tuberculosis at least since 1935?

A. Well, I feel that it is a very strong probability that he did have—just from the history and the appearance of his X-rays." [Dr. Ellis.]

"Q. What in your opinion caused those nodules?

A. They are probably the result of early tuberculosis which healed.

Q. Tuberculosis at some previous time?

A. That is correct. Tuberculosis had been there, had healed and been replaced by these nodules.

Q. In your opinion does the X-ray show evidence of silicosis?

A. Well, I do not feel that I am qualified to say. I would say that if there is any silicosis it is of relative minor degree but I do not feel qualified to pass on silicosis.

Q. The tuberculosis is the main thing?

A. That is correct.

\* \* \* \* \* \* \* \* \*

A. In my opinion Mr. Dobbs was exposed to tuberculosis at a relatively early age—in all probabilities from his mother. This primary affliction was overcome only to break down into an adult form of tuberculosis at presumably the time his cough developed. Several factors were probably concerned in this break down, the principal being his previous affliction and his exposure to dust containing free silicon dioxid.

Q. What effect, if any in your opinion, would his exposure to the rock dust in his highway construction work have with reference to the onslaught of tuberculosis?

A. Exposure to the dust containing silicon dioxid would make conditions very favorable for the development of tuberculosis.

\* \* \* \* \* \* \* \* \*

Q. That [cough] would suggest active tuberculosis?

A. Yes.

Q. Now, in speaking of 'lighting up,' will you explain —the lighting up of what?

A. Where a patient's history shows a primary affliction which healed. This injury or organization is walled up in the lung. It stays so walled up for a long time and then for some reason it is released from its walls and can go ahead and spread and develop into tuberculosis.

Q. That would mean another exposure to the germ unless the germ was there?

A. The germ was there but walled up.

\* \* \* \* \* \* \* \* \*

Q. It is not permanent in your opinion? It will respond to treatment and he may improve?

A. I think he will improve. \* \* \* I should think he would be able to get around and do some type of work in time." [Dr. Douglas.]

"Q. Will you state what your opinion is, Doctor?

A. Active pulmonary tuberculosis.

\* \* \* \* \* \* \* \* \*

A.   I think it is conceded by all men who observe chest conditions that exposure to dust is an irritating factor in increasing symptoms from any pulmonary infection.

Q.   Would such exposure to dust be a factor in this case?

A.   I would say that exposure to dust or any irritating substance would increase or aggravate a condition that may exist at that time.

Q.   And in your opinion is that true in the case of Mr. Dobbs?

A.   Yes.

Q.   You say increasing. I will ask you what do you mean by the term applied to Mr. Dobbs.

A.   Well assuming that this man had pulmonary tuberculosis and then went into an occupation where he is exposed to atmosphere that is heavily laden with some dust particles, it could not help but aggravate an existing condition.

Q.   Have you an opinion as to whether such exposure accelerated his condition?

A.   Yes.

Q.   And what is your opinion?

A.   My opinion is that it would.

Q.   Have you an opinion as to whether or not it was a factor in precipitating his present condition of total temporary disability?

A.   Yes. I would say that any irritating atmosphere would precipitate and add to the man's present disability which is active pulmonary tuberculosis at the present time. * * * My opinion is in this case we have a preponderance of evidence that this man has been exposed to heavily laden atmosphere and it is recognized by everyone that that is an aggravating factor, but I am not in a position to state that that is so here. It is only personal opinion and experience upon which I can base this statement.

*     *     *     *     *     *     *     *     *

Q.   In other words you think the possibilities all point to an aggravation and acceleration of this condition from the exposure to dust?

A. That would be the natural way of looking at it. I do not believe that any human being is capable of saying that this does, of course. * * *

Q. The probabilities are that it was active prior to the time he began working on the highway district?

A. I do not know. I can not tell you when his active tuberculosis started but from the history dating back to five years ago, I would say that it is a probability that it was active at that time. There was a period of two years during which he was not under a doctor's observation. * * *

Q. If a patient has had latent tuberculosis and then he was exposed to rock dust as testified to in this case, the exposure would in all probabilities light up his condition?

A. Yes, it would." [Dr. Clark.]

"A. * * * Upon studying the films in the stereoscope, I could see that the trunk shadows in the central and lower parts of the left lung and in the central part of the right lung showed fine nodulation of the type seen in early silicosis.

\* \* \* \* \* \* \* \* \*

A. Exposure to silica dust is considered to activate latent tuberculosis of the lungs and to predispose to its progress. * * * I believe that the exposure to this dust would light up a latent tuberculosis.

\* \* \* \* \* \* \* \* \*

A. Yes, but he is approaching the time—he is forty years old—he is approaching the time when tuberculosis does not develop very frequently except with some predisposing factor.

\* \* \* \* \* \* \* \* \*

Q. Now, in the present case, in the Dobbs case, in your opinion, the claimant has a slight degree of silicosis?

A. Yes, a mild degree of early silicosis.

Q. You could be mistaken?

A. Yes, I could be mistaken about anything.

Q. Well, you could be mistaken about that since it appeared to you to be in an early stage?

A. Yes, the diagnosis of first stage silicosis is always difficult." [Dr. Clark.]

█ Even though in the first instance respondent claimed his disability to be caused by silicosis, it was the board's duty to determine what the actual situation was and enter an order accordingly. (*Goaslind v. City of Pocatello*, 61 Ida. 435, 102 Pac. (2d) 650.)

Giving full effect to Chapter 161, 1939 Session Laws, page 286, because of the defenses interposed herein, it was initially incumbent upon the board to determine whether respondent was afflicted with disabling or non-disabling silicosis or accidental tuberculosis.

█ The onset of the tuberculosis herein, according to the evidence, was brought about by the action of silica dust, which was sudden and unexpected and therefore falls clearly within the doctrine announced in *Sullivan Mining Co. v. Aschenbach*, (Ida.) 33 Fed. (2d) 1:

"In common understanding we think plaintiff's injury would be regarded and spoken of as accidental, or, in more technical language, as 'an unlooked for mishap or an untoward event which was not expected or designed.' Nor do we think the injury was in any real sense an occupational disease. It was more in the nature of an acute case of poisoning. Had appellee suffered an impairment of health as the gradual result of breathing fumes from paints in common use and of working under ordinary conditions, that would be classed as an occupational disease. But here his disability resulted unexpectedly and suddenly from an unusual agency. Hazard from its use was not a common incident of a painter's occupation, but was fortuitous. The distinction between such a case and an occupational disease is clearly recognized in [citing cases]."

Adhering to and announcing the same proposition are: *Ramsay v. Sullivan Mining Co.* 51 Ida. 366, 6 Pac. (2d) 856; *Wozniak v. Stoner Meat Co.*, 57 Ida. 439, 65 Pac. (2d) 768; culminating as to the precise point in *Beaver v. Morrison-Knudsen Co.*, 55 Ida. 275, 41 Pac. (2d) 605.

It is apparently true that silicosis often results in tuberculosis. It is also evidently sometimes true that working in lead mines or under certain other conditions where one is exposed to lead fumes, etc., will bring about lead poisoning. The distinction in both instances between the condition amounting to the occupational disease and where it is accidental, as pointed out and as the theory of the above cases, is the suddenness of the onslaught.

Respondent's affliction with incipient tuberculosis or his predisposition or susceptibility to the same does not bar compensation. (*In re Soran,* 57 Ida. 483, 67 Pac. (2d) 906; *Taylor v. Federal M. & S. Co.,* 59 Ida. 183, 81 Pac. (2d) 728; *Nistad v. Winton Lumber Co.,* 59 Ida. 533, 85 Pac. (2d) 236, and 61 Ida. 1, 99 Pac. (2d) 52; *Young v. Herrington,* 61 Ida. 183, 99 Pac. (2d) 441; *Hamlin v. University of Idaho,* 61 Ida. 570, 104 Pac. (2d) 625.)

Tuberculosis is not by the statute declared to be an occupational disease. Therefore, it is unnecessary to consider whether or not a claim for disability because of silicosis, disabling or non-disabling, as such, where a sufficient time has not intervened to make applicable the occupational disease statute, is nevertheless or for any reason compensable.

The notice of accident was within time. (*In re Nixon,* 60 Ida. 64, on rehearing at 65, 87 Pac. (2d) 1007.)

The order of the board is affirmed. Costs awarded to respondent.

Budge, C.J., and Holden, J., concur.

Ailshie, J., concurs in the conclusion.

Morgan, J., deeming himself disqualified, did not participate.