185 P.2d 708

**WALKER v. HOGUE et al.**

No. 7366.

Supreme Court of Idaho.

Oct. 16, 1947.

Spencer Nelson, of Boise, and Ralph S. Nelson, of Coeur d' Alene, for appellants.

Robert Ailshie, Atty. Gen., and Glenn A. Coughlan, Asst. Atty. Gen., for Martin Const. Co. and another.

Walter Oros and E. B. Smith, both of Boise, for Hiram Walker.

HYATT, Justice.

Hiram Walker, while employed as a carpenter's helper for Martin Construction Company on September 19th, 1942, fell six feet from a scaffold, striking the ground with the back of his head, left shoulder and upper back as a result of which he was rendered unconscious for a few moments, and sustained injuries consisting of a basal skull fracture and sprain of the neck and left shoulder, resulting in stiffness in his neck and weakness of the left arm and loss of grip in the left hand. His attending physician, Dr. F. A. Pittinger, reported him surgically healed on March 1, 1943, and by reason of disability in his neck and loss of function in his left arm, estimated his permanent disability as of 20% compared to loss of the arm at the shoulder. Liability under the Workmen's Compensation Law,

Code 1932, § 43-901 et seq., was accepted by State Insurance Fund, surety for Martin Construction Company, and a compensation agreement was approved by Industrial Accident Board on March 19, 1943, under which Walker's permanent partial disability for work was fixed in accordance with Dr. Pittinger's estimate.

Between June, 1943, and September 25, 1945, on which latter date claimant was injured in a second accident hereinafter described, he worked intermittently shearing sheep, doing farm work, digging and picking potatoes, cutting grass, grinding tools and performing similar jobs. Otherwise, he was intermittently subject to temporary periods of total disability. He suffered with pain in his neck and left arm when working, and this arm gradually became less useful.

On September 25, 1945, while picking apples in the employ of F. H. Hogue for whom Idaho Compensation Company was surety, claimant fell 12 feet from a fruit ladder set in an insecure place, striking the ground with his left shoulder and injuring his left shoulder and ribs. He was attended by Dr. H. L. Newcombe, who hospitalized him for three weeks and treated him for suspected fracture of the left scapula and separation of the left ninth costochondral articulation. On July 20, 1946, Dr. Newcombe discharged claimant as surgically healed of the injuries received September 25, 1945. Idaho Compensation Company as surety for Hogue accepted liability and made a compensation agreement with him, by which claimant was paid compensation for total temporary disability from September 25, 1945, to July 20, 1946. This agreement, dated July 30, 1946, was filed with the Board August 3, 1946, but never approved.

On or about May 29, 1946, claimant filed with the Industrial Accident Board an application for review and modification of the award for his first accident, asking additional compensation from Martin Construction Company and State Insurance Fund, alleging in substance a progressive change for the worse on account of his first injury until he was permanently disabled for work. On July 8, 1946, Martin Construction Company and State Insurance Fund answered, denying any increase in disability, alleging claimant's second accident and injury of September 25, 1945, and claiming it was impossible, until claimant recovered therefrom, to determine what part, if any, of claimant's alleged permanent disability was due to the accident of September 25, 1945, and what part, if any, attributable to that of September 19, 1942. On July 9, 1946, the Board ordered F. H. Hogue and Idaho Compensation Company brought in as additional parties defendant. These parties answered on September 12, 1946, admitting the allegations of claimant's application, controverting the answer of Martin Construction Company and State Insurance Fund, alleging the compensation agreement with claimant for his second injury,

and claiming any disability he might have was the result of his first injury.

The matter was heard by the Board on November 20 and 21, 1946. The Board found, and it is accepted by all defendants, that the claimant was a total disability at the time of the hearing. It was further found that such disability resulted from a neurosis or psychosis commencing after and on account of the first accident, which had gradually increased, but with marked progressiveness thereof after September 1, 1944; that his degree of disability prior to the second accident was not continuously 'total and he was able to and did work intermittently; that he was unable to work at all after the second accident; and that while the second accident was not the major or sole cause of total disability, it contributed enough to make the claimant such and terminate his working career. By its award, the Board in effect apportioned payments for permanent and total disability between the two employers and their sureties.

From this award the defendants F. H. Hogue and its surety Idaho Compensation Company appeal, claiming that the Industrial Accident Board erred:

(a) In not finding that claimant's first injury was the sole cause of his disability;

(b) In not finding that claimant's disability was through a recurrence of the first injury, and that the State Insurance Fund was (solely) liable;

(c) In not finding as a matter of law that claimant's first injury was the natural and proximate cause of his disability, and that the award should be (solely) against the original insurance carrier;

and further claiming that the Findings of Fact of the Board are not based on any substantial, competent evidence.

Appellants' contentions may be summarized to this effect: That the Board erred in not finding that claimant's first injury was the sole cause of his total and permanent disability, and that there is no substantial, competent evidence to support the finding of the Board that claimant's second injury contributed to such total and permanent disability.

Appellants stress the medical testimony of Dr. Pittinger, Dr. Kellogg and Dr. Newcombe, all of whom in response to hypothetical questions gave their opinion that claimant's total disability was attributable to the first accident. However, Dr. Pittinger also testified that he had no opinion as to the amount or degree of disability that the claimant suffered on account of his first accident, and that he would not say that none of the claimant's present condition was the result of his second injury; that his opinion was based entirely upon the history given in the hypothetical question, and that when he had examined the claimant on December 11, 1945, he had assumed that the claimant's psycho neurosis was due in a major part to the second accident. Dr. Kellogg, who examined the claimant in

June, 1945, and again at the hearing, admitted on cross-examination that the second injury could have speeded up the progressive process of the claimant getting worse, and that he would not rule out the possibility of the present condition being a result of the second injury. Dr. Newcombe testified that the man was not able to work when discharged by him, but thought this was due rather to a previous existing condition. Dr. Newcombe went no further than to say that claimant's first accident was a "possible" cause of his present disability.

The claimant's testimony was somewhat vague, but he testified that he had been unable to work since his second injury, and that his condition prior to his second accident was not as bad as at the time of hearing. His wife testified on cross-examination that she thought his condition was worse since his second fall; that the method by which he carried himself was worse, as was also his method of dressing himself and cutting his food; that she had to dress him and cut his food all the time; that he could pick apples prior to his second fall, but could not work since; that he has been unable to drive his car since the second accident, but he had driven it to Utah from Emmett, Idaho, in April, 1945; that since the second accident "he can't hardly walk and he hurts all the time, and he can't lift his arm from his elbow up to his shoulder only like this [indicating], and he quivers"; that she had to assist him

more, had to cut his meat all the time, and had to dress him, lace his shoes and put him in and get him out of the bathtub, oftener.

The cause or causes of claimant's disability, and whether such disability resulted from only one or from both accidents, were questions of fact for the Industrial Accident Board to determine under all the circumstances. Tippett & Bond v. Moore, 167 Okl. 636, 31 P.2d 583; Robinson et al. v. State Industrial Commission et al., 176 Okl. 619, 56 P.2d 826; Dinoni v. Vulcan Coal Co., 132 Kan. 810, 297 P. 721, at page 724; Head Drilling Co. v. Industrial Accident Commission, 177 Cal. 194, 170 P. 157; Denver Producing & Refining Co. et al. v. Phillips et al., 163 Okl. 106, 21 P.2d 42, at page 45.

Claimant's inability to work and his other difficulties following his second accident, logically tend to show that such accident and injuries therefrom contributed in a sufficient degree to his psycho neurosis to make him a total disability for work. Even the medical experts recognized the injuries from the second accident as a possible contributing factor. The Industrial Accident Board, specializing as it does in the hearing of industrial accident cases, must be presumed by reason of its experience to be able to judge the causative factors in a particular case on both medical and non-medical evidence.

"Undoubtedly there are ailments so obscure in their nature that a commissioner or

jury, unaided by expert testimony, would not be permitted to determine whether they were causally related to an injury. But apart from such ailments, the recent trend and overwhelming weight of opinion clearly is to regard medical evidence as to causal relation as highly desirable but not essential. Hence, awards have been repeatedly upheld without a single shred of medical evidence.

"Often lay testimony can supply facts which logically tend to show that an injury or accident caused the condition complained of. And where the sequence of events is very convincing—for example, the injury or death followed immediately or shortly after a known cause—industrial commissions may properly infer causal relation without expert testimony.

"The modern concept is that it is enough if the preponderance of the probabilities, according to the experience of mankind, points toward a causal relationship. Thus, where death follows soon after an injury to an able bodied man, there arises a presumption or natural inference that the death was caused by the injury, in the absence of believed, contrary testimony. And even though the only doctor who testified stated that there was no causal relation, an award to a claimant may stand, as the doctor may be disbelieved and causal relation inferred from the rest of the evidence."—Horovitz "Current Trends in Workmen's Compensation," Reprinted from the Law Society Journal for August, 1947, Volume 12, No. 7, pages 658, 659 and 660.

The weight of the testimony of a physician as an expert is for the Industrial Accident Board to determine, and there is no distinction between expert testimony and evidence of other character as regards the weight to be given it in a particular case. Stroscheim v. Shay and Idaho Compensation Co., 63 Idaho 360, 120 P.2d 267. See also Ballenger v. Southern Worsted Corporation, 209 S.C. 463, 40 S.E.2d 681, to the effect that medical testimony should not be held to be conclusive, irrespective of other evidence.

If the findings of the Board are supported by substantial competent evidence, the same will not be disturbed. Bower v. Smith et al., 63 Idaho 128, 118 P.2d 737.

Proceedings under the Workmen's Compensation Law are not to be governed by strict procedure, but are to be liberally construed, and this rule applies to the Board's Findings of Fact and the sufficiency thereof. Bishop v. Morrison-Knudsen Co., et al., 64 Idaho 806, 137 P.2d 963.

In Cameron v. Bradley Mining Co., 66 Idaho 409, 160 P.2d 461, 463, this court said: "Where, then, as in the instant case, the facts and circumstances disclosed by the record 'are such as might very well lead different minds to reaching different conclusions upon the issue presented; and

where such is the case, however meager the evidence, if it is of a substantial nature and character, the findings of the triers of fact should prevail.' [In re] Estate of Randall, 58 Idaho 143, 146, 70 P.2d 389, 390, citing numerous decisions of this court." See also Smith v. Clearwater County, 65 Idaho 271, 143 P.2d 561.

The Industrial Accident Board heard the witnesses and was in the best position to judge the weight and credence to be given their testimony. This Court is not the fact finding body in compensation cases. It is only for us to determine whether there was any substantial, competent evidence before the Board which supported its conclusions of fact, and while the evidence in this case may in some respects be meager, yet it is of a substantial nature and character, sufficient to sustain the Findings of the Board. In view of the principles laid down in the foregoing cases, the award of the Industrial Accident Board should be and therefore is affirmed.

Costs awarded to respondents Martin Construction Company and State Insurance Fund.

BUDGE, C. J., and GIVENS, HOLDEN and MILLER, JJ., concur.