363 P.2d 1024

David FLASCHE, Employee, Claimant-Appellant,

v.

BUNKER HILL COMPANY, Self-Insured, Employer, Defendant-Respondent.

No. 8971.

Supreme Court of Idaho.

July 18, 1961.

Coughlan & Imhoff, Boise, for appellant.

Brown & Peacock, Kellogg, for respondent.

SMITH, Justice.

This appeal is from an order of the Industrial Accident Board denying appellant's claim for workmen's compensation benefits.

Appellant seeks recovery of compensation under either the workmen's compensation law, contending that his affliction of pulmonary tuberculosis was accidently caused or aggravated by exposure to silica dust, I.C. § 72–201, or the occupational disease compensation law on the ground that his malady is silicosis complicated with tuberculosis, I.C. § 72–1220.

Appellant in his claim for compensation alleges an accident about November 14, 1958, while mining underground as a miner for respondent, and describes occurrence of the accident as "sudden unexpected silicosis complicated with tuberculosis," which injured his lungs.

Appellant in his petition for hearing pleads the same facts and, additionally, that he became totally disabled for work November 15, 1958, I.C. § 72–1205, and will continue to be disabled, because of silicosis complicated with tuberculosis of the lungs (I.C. § 72–1220). Respondent denied those allegations. The Industrial Accident Board, after a hearing, entered its order denying appellant's claim for compensation, from which order appellant has appealed.

Appellant, 54 years of age, followed hard rock mining for intervals during a period of nearly 20 years preceding November 14, 1958, the date of alleged disablement. From October 10, 1953, to November 14, 1958, inclusive, he mined underground for respondent. During his working career as a hard rock miner the Board found that appellant was more or less exposed to inhalation of silica dust (I.C. § 72–1217).

The Board's ultimate findings and rulings are:

"That appellant fails to prove by preponderance of the evidence that his disablement is the result of silicosis,

or that silicosis is an essential factor complicating his tuberculosis;

"That there is no substantial evidence tending to prove an accident;

"That appellant is not entitled to recover upon his claim under either the occupational disease compensation law or the workmen's compensation law; and

"That appellant's disability is due to active pulmonary tuberculosis which was preceded by pleurisy, each a general, not an occupational, disease."

Appellant assigns as error the Board's failure to find that he is totally disabled for work because of silicosis complicated with tuberculosis. Appellant also contends that the Board erred in denying recovery under either of the theories advanced, i. e., first, that appellant suffered accidental tuberculosis brought about by sudden and unexpected action of silica dust, or second, that appellant's disablement is due to silicosis complicated with tuberculosis.

The assignments, since they question the sufficiency of the evidence to sustain the Board's order of denial of compensation benefits, require a review of the evidence for the purpose of determining whether there is sufficient competent evidence to sustain the Board's findings and order.

Appellant's testimony relates to his work record and termination of his employment because of his adverse physical condition; also to his various physical examinations by physicians. After such an examination and certain tests during November 1958, he went to the Idaho State Tuberculosis Hospital at Gooding, arriving there during January 1959. At the time of the hearing he was an outpatient of that hospital.

Appellant produced as his medical witness Dr. Paul M. Ellis, a physician and surgeon of some years' experience with special training in the field of silicosis. Commencing with the year 1941 and in the years 1942, 1947, 1948, 1951, 1952, 1955, 1957, and until October 20, 1959, the day before the hearing in this proceeding Dr. Ellis, and at times his associates Drs. Bonebrake, Hunter and Gnaedinger, made examinations of appellant, including x-rays of his chest.

All of the doctors, except Dr. Hunter after the examination of 1951, diagnosed appellant's affliction as silicosis one-minus. Dr. Hunter, 1951, and Drs. Ellis and Gnaedinger, in 1952, graded the silicosis zero-none.

Dr. Ellis explained that in 1951 and 1952 the medical profession changed the method of grading silicosis; up to that time the profession had "this [grade] one-minus as a means of determining that they [patients] had increased fibrosis without definite nodulation," but that such a showing, indicated by x-ray, is common to all forms of pneumoconiosis. Continuing, Dr. Ellis

stated: "because we were bewildering everybody by the silicosis one-minus * * * we didn't try to grade any of them unless they had definite nodulation," characteristic of silicosis. He then stated that x-rays of appellant's chest taken in 1952 and previous years showed no definite evidence of silicosis.

Dr. Ellis again took x-rays of appellant's chest in 1957; also on October 20, 1959, the day before the hearing; referring to the 1957 x-rays he thought he would call the silicosis grade one; then he qualified such statement saying, "It is not a far advanced one, it is one in which the gradation between the state we call linear fibrosis and nodulation is beginning to take place."

The Chairman of the Board propounded the following question to the doctor:

"* * * In view of your explanation on the change of system [grading], is there anything in your record, or in your recollection, at any time during your examination of this claimant from which you interpreted from the x-rays a nodulation?"

Dr. Ellis responded:

"* * * at no time in the x-rays which I have examined has the nodulation been more than minimal. It couldn't possibly be graded more than a silicosis one, and *I do not have x-rays which demonstrate that.*" (Emphasis supplied.)

The record shows that such statement included the doctor's examination of the x-rays of appellant's chest taken October 20, 1959, the doctor stating, however, that superimposed inflammation of tuberculosis may have been responsible in part for the markings in those films as not being "characteristic of silicosis grade one."

Respondent produced Dr. K. A. Tyler, a chest physician of some years' experience, in charge of the Idaho State Tuberculosis Hospital at Gooding. He also was shown to be experienced with silicosis and silico-tuberculosis.

The doctor knew appellant as a patient in that hospital, had studied his case, had examined x-rays taken as far back as 1951, and as late as November 25, 1959, just before appellant's discharge from the hospital as an outpatient. Referring to the several x-rays, the effect of Dr. Tyler's testimony is as follows:

The 1951 x-ray, while showing a healed calcified complex, did not show evidence of any active pulmonary disease. The 1952 x-ray shows fibrotic changes, indicating pleurisy with pleural reaction and adhesions formed to the diaphragm. The 1953 x-rays show diminution of the pleural reaction. The 1955 x-rays show some fibrotic markings in the lungs; also a healed calcified complex node which, he stated, "almost any adult over fifty years of age will have, and which usually is caused by

the first infection of tuberculosis which he may have had in childhood. Since most people have it, I would say it is practically normal." The 1957 x-rays also show fibrotic pleural reaction, again extending upward to the lateral chest wall; this had remained fairly constant since July 1953. The 1957 x-rays show a little more prominent pleural capping in the extreme apices, particularly on the right.

Continuing Dr. Tyler referred to an x-ray taken January 22, 1959, at the Idaho State Tuberculosis Hospital. He stated that the lower three-fourths of that x-ray shows but little change as compared to the 1955 film, but that the upper one-fourth of the 1959 x-ray shows considerable change, more extensive fibrosis, than previously shown. He then stated: "These are typical changes found in pulmonary tuberculosis, the fibro-productive type." The doctor then referred to the last x-ray of appellant's chest taken at the hospital, November 25, 1959, stating that such film shows some clearing in the pathology, but with the fibrotic condition still present, but having reached a point of stability.

Dr. Tyler diagnosed appellant's malady as "at least moderately advanced tuberculosis." Referring to the pleural condition demonstrated by the x-rays as far back as 1952, the doctor stated:

"Anyone who has a pleurisy, with effusion, that is untreated, can expect to have tuberculosis involving the parenchyma of their lungs within twenty-four months anyhow of the time they had the pleurisy with effusion."

He referred to the 1955 x-rays as showing some pleurisy with effusion. Dr. Tyler's further diagnosis and his reasons therefor appear in his testimony:

"We find no appreciable silicosis complicating his [appellant's] tuberculosis, that is, from an x-ray standpoint. * * * all of his changes in his x-rays are compatible with uncomplicated tuberculosis * * *

* * * * * *

" * * * I, personally, would not grade him even grade one [silicosis], because I can't see sufficient x-ray changes * * *.

* * * * * *

"You will find the same hilar changes he has got in the majority of people who have never been near a mine. The change he has got in his lung is not characteristic of a miner. * * *

* * * * * *

"I would not be able to make a diagnosis of silico-tuberculosis. All I can make a diagnosis of in this case is tuberculosis because there is nothing, from an x-ray standpoint, that looks like silicosis."

Dr. Tyler discounted the symptoms of emphysema, coughing, and shortness of

breath, stating that emphysema, while it frequently accompanies silicosis, nevertheless also "goes with aging process, the same as wrinkles and gray hair," and that a cough may accompany any respiratory illness or affliction. Referring to the symptom of coughing, the doctor further testified:

"of course, five years before he came here [Idaho State Tuberculosis Hospital] is when he developed pleurisy with effusion which would irritate the pleura and would give you a cough."

The doctor stated that there was no history or symptomotology of shortness of breath; also that appellant's vital capacity tests were normal.

Dr. Tyler mentioned two factors in relation to appellant's condition, i. e., the presence of silica in his environment, and the high incident of tuberculosis in Shoshone County as compared to other areas in the state, stating that those factors would increase appellant's chances of contracting tuberculosis, qualifying his statement, however, as being "a supposition"—not based on medical proof.

With reference to the progress of appellant's affliction, Dr. Tyler stated, "Well, it hasn't really been a relatively rapid progress particularly." The doctor's testimony then points to the pleurisy with effusion as perhaps the responsible factor of the tuberculosis, stating that once a person "has the pleurisy with effusion his own tubercle

bacilli that he had by that time are about as much danger to him as anything else. * * * he is exposed to his own tubercle bacilli twenty-four hours a day."

We are constrained to the view that the evidence is sufficient to support the Board's findings, that appellant's disability is due to active pulmonary tuberculosis, antecedent pleurisy having been the probable causative factor; that his disability is not due to silicosis, nor to silicosis complicated with tuberculosis of the lungs; nor is silicosis an essential factor in causing the disability, I.C. § 72–1220; also, that the evidence is insufficient to support the theory of personal injury caused by an accident arising out of and in the course of appellant's employment, I.C. § 72–201.

Neither pleurisy nor tuberculosis is an occupational disease. I.C. § 72–1204; Davis v. Sunshine Mining Co., 73 Idaho 94, 99, 245 P.2d 822.

The credit and weight to be given testimony in a workmen's compensation proceeding is for the Industrial Accident Board. Benson v. Jarvis, 64 Idaho 107, 127 P.2d 784; Walker v. Hogue, 67 Idaho 484, 185 P.2d 708; Miller v. State, 69 Idaho 122, 203 P.2d 1007; Davis v. Sunshine Mining Co., supra; Dawson v. Potlatch Forests, Inc., 82 Idaho 406, 353 P.2d 765.

A claimant in a workmen's compensation proceeding has the burden of

proving compensable disablement. Hill v. Sullivan Mining Co., 68 Idaho 574, 201 P.2d 93; Shumaker v. Hunter Lease & Gold Hunter Mines, 72 Idaho 173, 238 P.2d 425; Darvell v. Wardner Industrial Union, 78 Idaho 309, 302 P.2d 950; Dawson v. Potlatch Forests Inc., 82 Idaho 406, 353 P.2d 765. Particularly, before a claimant can recover compensation for silicosis disability, he must prove either: first, that he is totally disabled from uncomplicated silicosis; or second, that he is so disabled as a result of silicosis complicated by tuberculosis of the lungs and that silicosis was an essential factor in causing the disability. I.C. § 72–1219; I.C. § 72–1220; Davis v. Sunshine Mining Co., 73 Idaho 94, 97, 245 P.2d 822.

In a proceeding under the workmen's compensation law, if the Industrial Accident Board's findings are supported by substantial competent evidence, they will not be disturbed. Walker v. Hogue, 67 Idaho 484, 185 P.2d 708; Ohm v. J. R. Simplot Co., 70 Idaho 318, 216 P.2d 952; Nitkey v. Bunker Hill & Sullivan Mining & Con. Co., 73 Idaho 294, 251 P.2d 216; Devlin v. Ennis, 77 Idaho 342, 292 P.2d 469; In re Linzy, 79 Idaho 514, 322 P.2d 330. In a proceeding under the occupational disease compensation law, the same rule applies. Shumaker v. Hunter Lease & Gold Hunter Mines, 72 Idaho 173, 238 P.2d 425; Kernaghan v. Sunshine Mining Co., 73 Idaho 106, 245 P.2d 806; Davis v. Sunshine Mining Co., 73 Idaho 94, 245 P.2d

822; Peterson v. Sunset Minerals, Inc., 75 Idaho 354, 272 P.2d 692; Yanzick v. Sunset Minerals, Inc., 75 Idaho 384, 272 P.2d 696.

The Order of the Industrial Accident Board is affirmed. No costs allowed.

TAYLOR, C. J., and KNUDSON, McQUADE and McFADDEN, JJ., concur.