373 P.2d 935

Joseph G. E. STOCKDALE, Employee, Claimant-Appellant,

v.

SUNSHINE MINING COMPANY, Employer, Self-insured, Defendant-Respondent.

No. 9083.

Supreme Court of Idaho.

Aug. 3, 1962.

Piatt Hull, H. J. Hull & Sons, Wallace, for respondent.

Thomas Mitchell, Coeur d'Alene, for appellant.

**508**

SMITH, Chief Justice.

Appellant is sometimes herein referred to as claimant, respondent as the Company, and the Industrial Accident Board as the Board.

Claimant has appealed from the order of the Industrial Accident Board denying his claim for workmen's compensation benefits.

Claimant seeks recovery of compensation under the occupational disease compensation law. In his claim for compensation he alleges contraction of silicosis while employed by respondent and that his malady is "chronic fibrosing silicotuberculosis." In his petition for hearing he alleges such affliction, as of October 2, 1959, actually and permanently incapacitated him from performing work in remunerative employment. I.C., § 72–1205. Respondent denied those allegations.

The Board, upon hearing the matter, entered its order denying compensation to claimant, from which order he has appealed.

Claimant, 59 years of age, followed underground mining, particularly during fall and winter months, commencing the year 1916. He started working for respondent Sunshine Mining Company, January 6, 1949, as a miner. He then worked steadily underground for the Company until in June, 1954. The Company then transferred him to the surface where he continued working until October 2, 1959, the termination date of his employment. No issue is raised as to claimant's exposure to silica dust during his underground working career. I.C., § 72–1217.

The legal issue presented to the Board was whether silicosis is an essential factor causing claimant's permanent incapacity

from following work in remunerative employment.

The Board found that claimant's incapacity is due to a pathological lung condition caused principally, to a medical probability, by tuberculosis; that the affliction "does not present the typical picture of silicotic change" but rather, "a fibrotic tuberculous change." Based upon the medical testimony the Board made its ultimate finding:

"That while Stockdale [claimant] probably had a minimal degree of silicosis as of April 13, 1954 and September 6, 1956, it did not thereafter progress and was not an essential factor causing his total disability on October 2, 1959."

Claimant assigns as error the Board's finding that his incapacity was not caused in any essential degree by silicosis; also in finding that he was not injuriously exposed to silica dust during his surface work with the Company.

Those assignments, inasmuch as they question the sufficiency of the evidence to sustain the Board's denial of compensation, require a review of the record in order to ascertain if there is sufficient competent evidence to sustain the Board's finding and order.

Claimant's testimony relates to his work record as a miner in various localities; also with the Company, both underground and on the surface, and to his alleged exposure to silica dust during his surface employment.

He contended, in the "dry rooms" where he performed portions of his surface work, that he encountered dust similarly as in the Company's mine, occasioned by mining operations. The dust occurred when he swept the rooms of mine residue deposited from miners' clothing dried in the rooms. On Saturdays he spent about one and a half hours sweeping up the dry mine residue. On week ends in inclement weather (about four months during the year) he cut up discarded mine timbers for firing the boilers which, he asserts, caused dust. He worked about 5 weeks at the Company's sawmill and occasionally substituted as a night watchman; in performing such work he asserts that he was exposed to dust.

A considerable portion of the evidence adduced by both claimant and the Company is devoted to the extent of claimant's exposure to inhalation of silica dust during his surface work. The Board, in resolving the conflicts in that evidence, which is substantial, concluded that "the content of surface dust was not beyond normal tolerance."

Evidence also was adduced bearing upon the issue whether the exposure of claimant to silica dust, while employed by the Company, was injurious. Such evidence, ad-

duced in the form of medical testimony, relates to the legal issue, whether silicosis is an essential factor in causing claimant's incapacity. I.C., § 72–1220.

During the spring of 1954, preceding his transfer to surface work, claimant suffered from recurrent "colds" and respiratory infections. The Company authorized hospitalization of claimant for study and observation by Dr. Robert J. Revelli. Dr. Hubert E. Bonebrake also examined x-ray studies of claimant's chest condition. They were the only medical witnesses produced. Both showed training and experience in the areas covered by their testimony.

Dr. Revelli, in a medical report of April 13, 1954, referred to the history of claimant's recurrent "colds" and respiratory infections. Tuberculin patch test was positive but no active tuberculosis was found. X-rays revealed "a fine to moderate nodulation, linear fibrosis, and mottling bilaterally and most marked in the mid lung fields. Moderate increase in bronchial and hilar markings were present." The doctor's diagnosis was, "1. Silicosis, Grade 1 plus, with no evidence at this time of superimposed active tuberculous infection; 2. Chronic bronchitis, moderate." The doctor recommended surface work or work with minimal dust hazard. He felt, based upon his examinations of x-rays taken four years before, that the silicotic changes had progressed to a mild or moderate degree, but

that claimant was not incapacitated for work.

Dr. Revelli, in a medical report of February 20, 1960, following his examination of claimant on January 18, 1960, diagnosed claimant's malady as "non-acute, chronic fibrosing silicotuberculosis with minimal probably inactive tubercular change at the present time." He related that claimant had been under his care for several years. He mentioned "silicosis generalized and severe," also mentioned a "fibrotic calcifying secondary tubercular type of infectious process, and a developing corpulmonale and emphysema" as affecting claimant. In the doctor's opinion, claimant was totally and permanently incapacitated.

Dr. Revelli's testimony, elicited at the hearing before the Board, October 25, 1960, is based in part upon x-rays which he had examined of claimant's chest, taken at various intervals commencing in 1943 until October 10, 1960. He discerned minimal nodulation or fibrosis and emphysema in the films of 1943 and 1947 which, to the doctor, were not significant. From 1945 to 1954 there was some progression, more marked changes beginning in 1954 (indicated in his medical report of April 13, 1954, hereinbefore reviewed). 1956 x-rays showed marked increase in the small fibrotic nodules in the lungs, primarily in the middle lobe areas, with more diffuse and extensive fibrotic infiltrative type of change in both upper lobe areas, with some increase in

pleural adhesions. The lower lobes were essentially clear. Definite emphysema was developing. The remainder of the films taken commencing in September 1956 until in March 1960 showed general progressive change.

The x-rays taken in October 1960, in Dr. Revelli's opinion, reveal "a marked emphysematous change, pulmonary fibrosis, with change most marked in both upper lobes and in the peri-hilar areas with continued increase in pleural adhesions and obliteration of both costophrenic angles. No areas of definite cavitation are noted."

Dr. Revelli in arriving at his diagnosis stated that the 1956 x-ray of claimant's chest shows a typical appearance of linear fibrosis and minimal to moderate nodulation compatible with a diagnosis of silicosis, grade one—possibly plus—whereas the x-ray taken October 10, 1960, "shows primarily what would appear to be a *fibrotic tuberculosis change. * * * The major change* presented in these lung fields *does not present the typical picture of a silicotic change."* (Emphasis supplied). The doctor then gave his medical opinion as to the cause of claimant's disability based upon his long experience and study of the case:

"* * * Mr. Stockdale has had an approximation of thirty years plus of underground employment. He presents a progressive pulmonary history over the last five to eight years, and presents

x-ray evidence more compatible with a fibrotic chronic tuberculous infection in his lung fields with only questionable findings compatible with significant silicotic change."

After mentioning the long history and other studies of claimant, the doctor continued,

"I can find no evidence, primary or secondary, indicating an active tuberculosis at this time or in the past. In addition, x-ray opinions have varied as to any degree of silicosis, and in my opinion *he has a generalized pulmonary fibrosis,* a marked pulmonary emphysema, *a marked chronic pleural adhesive process,* secondary to either acidfast silicotic or idiopathic etiology, (Emphasis supplied).

\*   \*   \*   \*   \*   \*

"It is my opinion that he has a pulmonary fibrosis and the other pathological changes in his lung fields that can't etiologically be the result of and/ or idiopathic tuberculous silicotic, \*   \*   \*."

Dr. Hubert E. Bonebrake treated claimant at times during the period of March 13 to September 26, 1959, and examined x-rays of claimant's chest. In the doctor's opinion the 1943 and 1947 x-rays showed a normal chest; he added, however, that he felt by 1943 or 1947 claimant's chest would have shown evidence of silicosis if he had been mining since 1916. The doctor considered

that his own x-rays taken in 1959 did not show "the typical fibrotic condition produced by silicon dioxide." He expressed his opinion regarding claimant's affliction,— "this is a chronic inflammatory process which developed some time after 1947, and, first, one has to consider that this is tuberculosis." Asked on cross-examination if he eliminated the possibility that claimant's malady was silico tuberculosis, he stated, *"I do not think there is any silicosis there."* (Emphasis supplied).

In summary some conflict appears between Dr. Revelli's written medical reports and his later testimony concerning whether claimant suffers a degree of silicosis. In his closing testimony, however, the doctor expressed considerable doubt as to whether claimant is afflicted by silicosis inasmuch as he did not present the typical picture of silicotic change but rather, one of fibrotic tuberculosis change compatible with a fibrotic chronic tuberculosis. It is noted that Dr. Bonebrake similarly testified.

Dr. Bonebrake in his diagnosis eliminated silico tuberculosis because in his opinion silicosis was not present nor was its fibrotic process indicated by recent x-rays. He classified the malady as a chronic inflammatory affliction with tuberculosis as the considered cause.

■ Analysis of the case because of its medical aspects requires and is dependent upon the expert medical knowledge of the two physicians, neither expected nor possessed by lay witnesses not trained in the field of medicine; and the basis of any order or award must rest upon and be supported by such expert testimony. Fackenthall v. Eggers Pole & Supply Co., 62 Idaho 46, 108 P.2d 300; Zipse v. Schmidt Bros., 66 Idaho 30, 154 P.2d 171; Walker v. Hogue, 67 Idaho 484, 185 P.2d 708; Oliver v. Potlatch Forests, 73 Idaho 45, 245 P.2d 775; Laird v. State Highway Department, 80 Idaho 12, 323 P.2d 1079.

■ In a compensation proceeding if the Industrial Accident Board's findings are supported by competent substantial evidence they will not be disturbed on appeal. The same rule applies in a proceeding under the occupational disease compensation law. Flasche v. Bunker Hill Company, 83 Idaho 420, 363 P.2d 1024, and authorities therein cited.

We quote from Flasche v. Bunker Hill Company, supra, the rules therein applied, and applicable in the case at bar:

"A claimant in a workmen's compensation proceeding has the burden of proving compensable disablement. Hill v. Sullivan Mining Co., 68 Idaho 574, 201 P.2d 93; Shumaker v. Hunter Lease & Gold Hunter Mines, 72 Idaho 173, 238 P.2d 425; Darvell v. Wardner Industrial Union, 78 Idaho, 309, 302 P.2d 950; Dawson v. Potlatch Forests Inc., 82 Idaho 406, 353 P.2d 765. Particularly, before a claimant can recover compensation for silicosis disability, he must prove either: first, that he is totally

disabled from uncomplicated silicosis; or second, that he is so disabled as a result of silicosis complicated by tuberculosis of the lungs and that silicosis was an essential factor in causing the disability. I.C. § 72–1219; I.C. § 72–1220; Davis v. Sunshine Mining Co., 73 Idaho 94, 97, 245 P.2d 822."

Review of the evidence adduced herein, particularly the expert medical evidence, shows that it is competent, and sufficient to support the Industrial Accident Board's finding, that appellant's disability, I.C., § 72–1205, is caused principally, to a medical probability, by tuberculosis, and that silicosis was not an essential factor in causing the disability, I.C., § 72–1220.

Tuberculosis is not an occupational disease. I.C., § 72–1204; Davis v. Sunshine Mining Co., 73 Idaho 94, 245 P.2d 822; Flasche v. Bunker Hill Company, 83 Idaho 420, 363 P.2d 1024.

While we have examined appellant's remaining specifications of error and the record as regards the same, we deem it unnecessary to discuss them at length, inasmuch as the principal issue involved in this proceeding, as hereinbefore pointed out, is so largely dependent upon the expert medical evidence adduced.

The order of the Industrial Accident Board is affirmed. No costs allowed.

TAYLOR, KNUDSON, McQUADE and McFADDEN, JJ., concur.