383 P.2d 333

*Eldon COMISH, Employee, Claimant-*
**Appellant,**

**v.**

**J. R. SIMPLOT FERTILIZER CO., Employ-
er, and Argonaut Insurance Co., Sure-
ty, Defendants-Respondents.**

**No. 9237.**

Supreme Court of Idaho.

June 26, 1963.

Moffatt, Thomas, Barrett & Blanton, Boise, for respondents.

Milton E. Zener, Pocatello, for appellant.

SMITH, Justice.

Appellant Eldon Comish is herein sometimes referred to as the claimant, respondent J. R. Simplot Fertilizer Co., employer, as Simplot, and the Industrial Accident Board as the Board. Respondent Argonaut Insurance Co. insures Simplot's liability as an employer under the Workmen's Compensation Law.

Claimant seeks recovery, under the Workmen's Compensation Law, of certain hospital, medical, dental and kindred expenses; and of compensation, including permanent partial disability benefits because of loss of his teeth, allegedly caused by accident arising out of and in the course of his employment by Simplot. This appeal resulted upon the Board's denial of any recovery to claimant.

Claimant commenced working for Simplot in its commercial phosphate fertilizer plant, near Pocatello, Idaho, during June of 1957, and was so employed at the time of the hearing of this proceeding during January, 1962. For a period of about 3 years prior to the time of the hearing claimant worked in the filtering area of the plant.

In the Simplot plant the manufacture of commercial phosphate fertilizer required the treatment of crushed phosphate rock with phosphoric acid, and sulphuric acid, in equipment referred to as acidulators, agitators and reactors. The acidulation process is accomplished by treating the crushed phosphate rock in reactors which are large covered tanks. One effect of the acidulation process is the release of fluorine which, by rapid combination with other substances, forms fluorides. Simplot eliminates the fluorides from the air exhausted from the acidulation operation by "scrubbers" which collect the fluorides in water, which is then passed outside to a settling pond. After acidulation the crushed, treated phosphate rock, a substance called "slurry," is passed through a filtering or flotation process in the filtering area of the plant.

Claimant testified that during the latter part of August, 1961, while still working in the filtering area of Simplot's plant he suffered swelling in his right lower jaw, which subsided in a day or two; that later he suffered some swelling in his upper jaw and some upper teeth felt loose, and that the condition persisted. Claimant sought medical and dental advice on October 2, 1961. After unsuccessful, conservative treatment, his teeth were removed and he obtained artificial dentures.

November 14, 1961, claimant filed with the Board a claim for workmen's compensation benefits on account of a personal injury which he alleged he received during August, 1961, caused by accident arising out of and in the course of his employment by Simplot. He alleged that subjection to phosphoric acid fumes during his work caused injury to his gums which resulted in removal of all his teeth.

Claimant, in his petition for hearing the claim, alleged that the injury occurred between August 30 and October 30, 1961, that he notified his employer on October 30, 1961; that he suffered permanent partial disability because of loss of his teeth, and incurred certain expenses for medical and hospital attendance. He sought recovery therefor under the workmen's compensation law.

Respondents, in their answer, resisted the claim on the principal ground that claimant did not receive an accidental, compensation covered injury. I.C. § 72–201.

The Board, after a hearing had, entered findings of fact and rulings of law, followed by an order denying an award and dismissing claimant's claim and petition. Claimant's appeal is from the Board's order of denial.

Claimant assigns error of the Board in failing to find that he received a personal injury caused by an accident arising out of and in the course of his employment by Simplot, and in denying him compensation. The Board based its denial upon grounds, inter alia, as follows:

That claimant failed to prove beyond a possibility that the disease allegedly resulting in the loss of his teeth, was caused by the alleged conditions of his employment.

That claimant failed to prove that the malady which afflicted him was an occupational disease covered by I.C. § 72–1204.

That claimant failed to prove that such disease was caused by an accident arising out of and in the course of his employment.

The basic issue which claimant raises by his assignments is whether the personal injury which he suffered is covered by the Workmen's Compensation Law, or Occupational Disease Compensation Law. Appellant questions the sufficiency of the evidence to sustain the Board's order denying compensation. Examination of the evidence and the law applicable thereto will determine whether the Board correctly decided the issue.

The record indicates that fluorides are considered toxic when inhaled in excessive quantities. Mr. Burkhardt, a health engineer in the employ of Idaho's Department of Public Health, testified that he had made some twenty periodic tests of the concentration of fluorides in the air at the

Simplot plant during approximately the period of ten years prior to and including the year 1960. He showed acquaintance with the plant and its operations. He testified that the amount of fluoride released in the atmosphere in the filtering area where claimant worked, was "very minor," "very slight"; that three parts of fluoride compounds per million parts of air or "2.5 milligram per cubic meter" was allowable for industrial workers; that he would assume such would be a safe limit of exposure to most workers, working 8 hours a day, 5 days a week, as did claimant in such employment; that at the Simplot plant he had found the air in the industrial environment quite clean of fluorides,—within the allowable limits.

Inconsistencies appear in claimant's testimony concerning the onslaught of symptoms of the alleged malady which caused the loss of his teeth. He testified that prior to August, 1961, he had no trouble with his teeth, or with the gums; that such condition started in August, 1961, and that it was not something that came on gradually. However, the record shows, and the Board found, that claimant had related contrary medical history to both his attending physician and his dental surgeon. Dr. Sharp, the physician, testified that claimant gave him a history of noticing sore mouth and gums, and that his teeth seemed to be loosening during the year preceding early October, 1961, when claimant sought the doctor's advice. Dr. Messmore, the dental surgeon, testified that claimant gave him a history of the gums becoming progessively worse over the preceding 12 months. Dr. Messmore felt, in the light of such history, that the condition was progressive and was material to his diagnosis. The doctor also observed that claimant had followed poor dental practices.

Claimant also gave history to his attending physician that he had worked in heavy fumes of phosphorus or fluorides. This is contrary to the testimony of Mr. Burkhardt the health engineer, whose testimony indicated that the air of the Simplot plant was quite clean, containing very minor quantities of fluorides, within the allowable industrial limit.

Dr. Sharp in his attending physician's report (an exhibit herein) made to the Industrial Accident Board during October, 1961, diagnosed claimant's condition as "destruction of bones of jaw." In that report appears the question, "State, in patient's own words, cause of and how accident occurred.", to which the doctor answered, "Swelling of gums has become more frequent annd severe for about past year." The doctor referred claimant to Dr. Messmore for dental treatment.

Dr. Messmore initially diagnosed claimant's malady as a disease caused by fluorides. During October, 1961, the doctor made a report (an exhibit herein) to the

Board, that claimant suffered from bone destruction; in answer to the question, "State, in patient's own words, cause of and how accident occurred.", he stated, "Swelling and sore gums becoming progressively worse over the last 12 months."

Dr. Messmore testified that claimant's affliction appeared to be fluorosis; that fluorides constituted an irritant to mucous membranes; however, his testimony appears that, in his opinion, "it is very hard to determine" whether claimant suffered the disease of fluorosis. The doctor further testified that such a tentative diagnosis was based upon history given by claimant; but in the light of the facts he was asked to consider, particularly relating to the very slight or very minor presence of fluorides in the industrial area in which claimant worked, he, the doctor, was of the opinion that claimant was not afflicted by a disease attributable to fluorides. He recognized that the hospital records indicated variant diagnoses of the disease, the most definitive, (as the Board found), being "a peridontal breakdown surrounding all remaining teeth."

Dr. Messmore regarded the breaking down of the periodontium, the loosening of the teeth, and the poor dental hygiene as being consistent with claimant's affliction, a disease formerly termed pyorrhea, (which the doctor considered a misnomer), stating that the condition was consistent with the disease now called periodontoclasis. He then testified as to eliminating the particular history given to him by claimant about the air being heavily contaminated by fluorides; that claimant's malady was just as consistent with common diseases of the mouth as with fluorosis.

X-ray photographs taken of the area of claimant's afflicted teeth failed to show the alleged condition of fluorosis. Dr. Messmore stated that with fluorosis there occurs a density or hardening of the bone, which condition was not shown in the x-rays. Some sloughing away or disappearance of bone tissue between the teeth had occurred, quite contrary to indicia of fluorosis because, "with fluorosis you would have a hardening or density."

Dr. Messmore then testified in effect that his former opinion as to the cause of claimant's malady was based upon claimant's recital of history, but that if such history was wrong or defective, then his opinion as formerly expressed would lose weight.

The record also showed that several other employees in the Simplot plant worked in the identical filtering area in which claimant worked, and that none of those employees had suffered from any mouth condition like or similar to that which afflicted claimant.

Answering claimant's additional contention that he became afflicted with an occu-

pational disease we again point to the history which the Board in effect found to be true, i. e., that claimant had suffered some discomfort of his gums and teeth during 12 months preceding October, 1961, which indicated a gradual, rather than a sudden onslaught of the affliction. If the malady had been caused by fluorine as claimant contends, its gradual progression removed it from the sphere of an accidental personal injury in that it did not constitute "an unexpected, undesigned, and unlooked for mishap, or untoward event, *happening suddenly* and connected with the industry in which it occurs." (Emphasis supplied). I.C. § 72–201. See also Beaver v. Morrison-Knudsen Co., 55 Idaho 275, 41 P.2d 605, 97 A.L.R. 1399; Foote v. Hecla Mining Co., 62 Idaho 79, 108 P.2d 1030; Dobbs v. Bureau of Highways, 63 Idaho 290, 120 P.2d 263; Carlson v. Batts, 69 Idaho 456, 207 P.2d 1023; Shumaker v. Hunter Lease & Gold Hunter Mines, 72 Idaho 173, 238 P.2d 425.

We have also examined I.C. § 72–1204 which sets forth the schedule of compensable occupational diseases. The schedule does not include any disease resulting from contact with fluorine or fluorides. The law is not one "blanketing" all occupational diseases but extends coverage only to those scheduled diseases.

Claimant thus has failed to adduce evidence supportive of a theory of recovery under either the workmen's compensation law or occupational disease compensation law, which would substantiate a reversal of his initial position, that he suffered a nonindustrial affliction for which he accepted benefits under Simplot's group insurance policy affording nonindustrial coverage. Ansbaugh v. Potlatch Forests, Inc., 80 Idaho 515, 334 P.2d 442.

Appellant, within thirty days following the Board's decision, moved for a reconsideration and requested the Board to investigate "the working conditions at Simplot's," presumptively under the Board's general powers of investigation of working conditions of workmen, to make inspections and to require observance of reasonable safety regulations by employers. Idaho Code, Title 72, c. 11. Appellant assigns error of the Board in failing to make such an investigation.

Answering such contention, at the risk of some duplication, the record herein shows periodic examination of Simplot's premises by a health engineer of Idaho's Department of Public Health over some ten years prior to the occurrence of claimant's affliction; that Simplot had installed equipment designed to control the fluorides and had controlled it within the minimal industrial allowance; that no other workman in the filtering area where claimant worked suffered any affliction of his teeth or gums; and that claimant's own attending dental

surgeon could not classify claimant's affliction as fluorosis or due to fluorides, but classified the malady as a disease formerly known generally as pyorrhea, and by the present day dental science as periodontoclasia, i. e., "destruction of periodontal tissue; pyorrhea alveolaris." Dorland's American Illustrated Medical Dictionary. Under such circumstances we fail to discern any merit in such assignment.

■ The outcome of this proceeding, i. e., whether claimant should be awarded or denied compensation benefits, was largely dependent upon the testimony of the medical experts; in this case they were his own witnesses. "Admittedly an analysis of the case, because of its medical aspects, requires and is dependent upon knowledge, neither expected nor possessed by lay witnesses not trained in the field of medicine, and the basis for any award' must [necessarily] rest upon and be supported by such testimony." Laird v. State Highway Department, 80 Idaho 12, 16, 323 P.2d 1079, 1081, and cases therein cited. Here the Board after careful analysis of the medical evidence, considered in the light of the industrial conditions under which claimant worked and the inconsistencies in his own testimony, denied any recovery to him. We are constrained to the view that the evidence sustains the Board's order of denial.

■ Credit and weight to be given testimony in a workmen's compensation proceeding is for the Industrial Accident Board. Benson v. Jarvis, 64 Idaho 107, 127 P.2d 784; Walker v. Hogue, 67 Idaho 484, 185 P.2d 708; Miller v. State, 69 Idaho 122, 203 P.2d 1007; Davis v. Sunshine Mining Company, 73 Idaho 94, 245 P.2d 822; Dawson v. Potlatch Forests, Inc., 82 Idaho 406, 353 P.2d 765; Flasche v. Bunker Hill Company, 83 Idaho 420, 363 P.2d 1024.

■ It is only where the Board's findings are clearly unsupported as a matter of law, that it then is within the province of this court to set them aside and the decision based thereon. I.C. § 72–609; Laird v. State Highway Department, 80 Idaho 12, 323 P.2d 1079; Sutton v. Brown's Tie & Lumber Co., 82 Idaho 135, 350 P.2d 345; In re Duncan, 83 Idaho 254, 360 P.2d 987.

■ An injury does not arise out of and in the course of employment where the injury received cannot be fairly traced to the employment as a contributing, proximate cause. I.C. § 72–201; In re Malmquist, 78 Idaho 117, 300 P.2d 820; Eriksen v. Nez Perce County, 72 Idaho 1, 7, 235 P.2d 736, 740; Dutson v. Idaho Power Co., 57 Idaho 386, 65 P.2d 720; Neale v. Weaver, 60 Idaho 41, 88 P.2d 522.

■ A compensation claimant has the burden of proving that he received a personal injury caused by an accident arising

out of and in the course of his employment. I.C. § 72–201; Brooke v. Nolan, 59 Idaho 759, 87 P.2d 470; Dyre v. Kloepfer & Cahoon, 64 Idaho 612, 134 P.2d 610; Johansen v. Ferry-Morse Seed Co., 69 Idaho 275, 206 P.2d 545; Miller v. City of Boise, 70 Idaho 137, 212 P.2d 654.

 A claimant seeking to recover compensation for an occupational disease has the burden of showing compensable disablement under the occupational disease compensation law. I.C. § 72–1204; Hill v. Sullivan Mining Co., 68 Idaho 574, 201 P.2d 93; Flasche v. Bunker Hill Company, 83 Idaho 420, 363 P.2d 1024; Stockdale v. Sunshine Mining Company, 84 Idaho 506, 373 P.2d 935.

The findings of the Industrial Accident Board when supported by substantial, though conflicting, evidence will not be disturbed on appeal. Knight v. Younkin, 61 Idaho 612, 105 P.2d 456; Gragg v. Cook Cedar Co., 64 Idaho 50, 127 P.2d 757; Zipse v. Schmidt Bros., 66 Idaho 30, 154 P.2d 171; Johansen v. Ferry-Morse Seed Co., 69 Idaho 275, 206 P.2d 545; McGee v. Koontz, 70 Idaho 507, 223 P.2d 686; Limprecht v. Bybee, 76 Idaho 293, 281 P.2d 1047; Miller v. Bingham County, 79 Idaho 87, 310 P.2d 1089; Clevenger v. Potlatch Forests, Inc., 82 Idaho 383, 353 P.2d 396; In re Brown, 84 Idaho 432, 373 P.2d 332. Moreover there must be a probable, not a possible, connection between cause and effect to constitute an accident arising out of and in the course of employment. Brooke v. Nolan, 59 Idaho 759, 87 P.2d 470; Jensen v. Bohemian Breweries, Inc., 64 Idaho 679, 135 P.2d 442; Darvell v. Wardner Industrial Union, 78 Idaho 309, 302 P.2d 950; In re Brown, supra.

The order of the Industrial Accident Board denying recovery to claimant is affirmed. No costs allowed.

KNUDSON, C. J., and McQUADE, McFADDEN, and TAYLOR, JJ., concur.