(No. 6746.   July 23, 1940.)

EULA L. HAMLIN, as Special Administratrix of the Estate of S. C. HENDRIX, Respondent, v. UNIVERSITY OF IDAHO, Employer, and STATE INSURANCE FUND, Surety, Appellants.

[104 Pac. (2d) 625.]

Clarence L. Hillman, for Appellants.

Cox, Ware & Stellmon, Elmer E. Johnston and Frank O'Leary, for Respondent.

BUDGE, J.—Subsequent to the argument of this cause on its merits the court requested briefs upon questions suggested by reason of the fact that the record disclosed that two members of the Industrial Accident Board took testimony of the witnesses in the state of Washington upon stipulation of the parties.

The broad question involves only the power, right or jurisdiction of the Industrial Accident Board to take evidence without the state of Idaho.

After an examination of this matter and the briefs that have been submitted we are convinced that the taking of the testimony by the board in Spokane on stipulation of the parties did not oust the board of jurisdiction of the case. In other words, before this hearing in Spokane the board had acquired jurisdiction of the subject matter and of the parties. The board was also vested by statute with jurisdiction over this kind of controversy. (*Taylor v. Hulett*, 15 Ida. 265, 272, 97 Pac. 37, 19 L. R. A., N. S., 535; *Baldwin v. Anderson*, 50 Ida. 606, 614, 299 Pac. 341; *Richardson v. Ruddy*, 15 Ida. 488, 98 Pac. 842.)

"The court had the jurisdiction, power and authority to hear and determine that question. It accordingly did so. If the court committed an error in deciding the question thus

presented, we answer that the court had jurisdiction to commit the error." (*Utah Assn. of Credit Men v. Budge*, 16 Ida. 751, 757, 102 Pac. 691.)

The fact that the taking of proof may have been irregular or erroneous or that improper proofs were admitted or considered, would not oust the board of its jurisdiction, although such error might have been sufficiently prejudicial to cause a reversal of the award and order subsequently entered by the board had objection been made. Error, if any, committed herein was done upon stipulation of the parties to the proceeding; the error was invited and no assignment of error has been urged against that action. The effect of the stipulation amounted to a waiver of the official or binding oath and the taking of statements from the witnesses on cross-examination and (perhaps) the solemnity of an oath. Such, however, would not affect the jurisdiction of the board. Unsworn testimony or statements received without objection on the trial of a case may be considered the same as any other evidence in the case and cannot be subsequently urged as ground for new trial. (46 C. J. (New Trial), sec. 54, p. 97; 70 C. J., p. 486, sec. 654, and notes.) This court recently held unsworn *ex parte* statements were sufficient upon which to base an award in *McGarrigle v. Grangeville Elec. Light & Power Co.*, 60 Ida. 690, 97 Pac. (2d) 402, 403, the court saying:

"The proceedings on which the present order was made are fully as irregular and summary as those on which the original order was made. Here no evidence whatever was introduced except the testimony of the claimant himself and a neighbor who had seen him intermittently since 1922. No medical testimony was introduced. The record, however, on the original proceedings, comprising the correspondence, the reports of the doctors, recommendation of the medical adviser, and the award as above set out, was introduced. Time had not changed or improved them. It should be remembered that these had all been taken *ex parte* and constituted the evidence on which the first order was made, which it is now claimed was *ex parte* and without jurisdiction. In passing, it should be remembered that the Workmen's Compensation Act says: 'The procedure under this *act shall be*

*summary and simple'* (italics supplied) and that it contemplates, at least in part, *ex parte* investigation by the board. (See secs. 43–1401, 43–1403–4.) ''

Claimant, a plumber, was engaged in laying a sewer pipe under a building at the University of Idaho. The work consisted of placing, joining, calking and fitting the pipe in the bottom of a trench twelve to twenty-four inches deep and about fifteen inches wide, cut through and under the floor of the building. The cast iron joints or lengths of pipe weighed approximately sixty-five pounds each with an additional fourteen pounds for each fitting. Claimant without assistance slid these lengths into position and calked and fastened them together. In doing the work it was necessary for claimant to handle the joints of pipe in a bent and stooped position with his feet and knees resting upon the floor of the building and all work was done below the level of his feet, that is in the bottom of the trench. Claimant worked in such manner approximately four days and on the 15th day of August, as stated in the findings, the following occurred:

''A turn had to be made to catch some toilet room fixtures, and at about 4:30 P. M. on said 15th day of August, claimant rolled the joined lengths of soil pipe, which weighed from 300 to 350 pounds, into position and got down on his right knee with his foot on the floor and took hold of the pipe to pull it in place and when he gave a pull the foot which was on the floor slipped and he felt pain in the back of his left leg; that the claimant straightened up but the pain in the back of his leg did not cease; that he quit his work and left his tools on the job; that the next morning he reported to his foreman and told him he had hurt his leg and that he, the foreman, would have to get another plumber as he was going to return to Spokane, where his home is, because he was unable to proceed with the work.''

Claimant suffered continuous pain in his left leg after leaving the job and during all that night and it was difficult for him to walk at all the next day. Upon his return to Spokane he was received in the office of Dr. Charles R. Mowery for treatment on August 17th, at which time he was suffering great pain in his left leg below the knee and after

extended treatment without result claimant was admitted to Sacred Heart Hospital in Spokane about December 1, 1938, and during January, 1939, his left leg was amputated at the knee.

Thereafter claimant claimed and was awarded compensation for total temporary disability and for medical and surgical attendance and hospitalization, from which award of the Industrial Accident Board this appeal was taken.

Appellants' seven assignments of error all go to the one main point that the Industrial Accident Board erred in entering its rulings of law and award particularly for the reason that the findings of fact do not show that claimant had a personal injury by accident arising out of and in the course of his employment and that there are no findings of fact herein based upon any substantial competent evidence to show that claimant received a personal injury by accident arising out of and in the course of his employment. Appellants' theory concisely stated is first: That the Industrial Accident Board in its findings found no accident in this case, and second; that the evidence revealed no accident upon which a compensable injury could be maintained, and therefore the board erred in entering an award in favor of claimant.

In their brief appellants urge the following:

"In this case, the disease did not result from the injury, the injury resulted from the disease.

Now, to authorize an award as the result of a disease, there must be two independent injuries:

First, an injury resulting from an accident.

Second, an injury resulting from a *disease which resulted from an injury, which, in turn, resulted from the accident.*"

Such contention has, we believe, been fully answered in *Young v. Herrington, ante,* p. 183, 99 Pac. (2d) 441, a situation similar to that herein wherein the court said:

"Where injury results partly from accident and partly from pre-existing disease it is compensable if the accident hastened or accelerated the ultimate result, and it is immaterial that the claimant would, even if the accident had not occurred, have become totally disabled by the disease. (Cases.)"

█ The remaining question is whether or not there was substantial and competent evidence that claimant suffered an accident which hastened or accelerated the ultimate result of a pre-existing disease. Dr. Charles Mowery, attending physician, testified that claimant was an able-bodied man, although suffering with arteriosclerosis, and that he suffered a sudden impairment of the circulation of his left leg by the cramped, strenuous position in which he was obliged to work and that this cramped position caused a swelling of the walls of the large blood vessels, and possibly small blood vessels, the circulation was immediately cut off, and that brought more swelling and inflammation and blood clots formed to such an extent that the circulation was so substantially impaired in the left leg below the knee that gangrene resulted, the leg did not respond to treatment and amputation was necessary. Dr. Mowery's conclusion was that the nature of the work being performed by claimant was the competent producing cause of his condition. Four other doctors were called as expert witnesses and all substantially agreed with Dr. Mowery that impaired circulation would produce an effect such as that here involved in a person suffering from arteriosclerosis. Two of these experts gave as their opinion that conditions under which claimant was working was the primary probable competent producing cause of claimant's disability, one that it might have been, and one that in his opinion it was not the probable cause but it was possible. There was substantial and competent evidence that claimant's disability was caused by the position he was required to assume in the performance of the duties of his employment, and claimant was entitled to an award of compensation as stated in *Evans v. Cavanagh*, 58 Ida. 324, 73 Pac. (2d) 83:

"That testimony being eliminated, the remaining evidence is amply sufficient to establish that Evans died from a ruptured aneurysm due to increased blood pressure caused by the exertion required by the performance of the duties of his employment, and respondent is entitled to compensation provided by our workmen's compensation law for the dependents of employees who lose their lives by accident arising

out of and in the course of their employment. (*Butler v. Anaconda Copper Min. Co.,* 46 Ida. 326, 268 Pac. 6; *In re Larson,* 48 Ida. 136, 279 Pac. 1087.)''

See, also, *Nistad v. Winton Lumber Co.,* 59 Ida. 533, 85 Pac. (2d) 236; *Stilwell v. Aberdeen Springfield Canal Co.,* 61 Ida. 557, 102 Pac. (2d) 296:

''Such accident, that is the effect produced by the strong cold wind blowing through the broken window (producing double vision), arose out of and in the course of respondent's employment.''

The award of the Industrial Accident Board should be and is hereby affirmed.

Ailshie, C. J., and Givens and Morgan, JJ., concur.

Holden, J., sat at the hearing but did not participate in the decision.