502 P.2d 323

**Wade S. CLARK, Claimant-Respondent,**

v.

**Jack SAGE and Vern McCalmont dba Sage & McCalmont Logging Co., Employer,**
and
**State Insurance Fund, Defendants-Appellants.**

**No. 11049.**

Supreme Court of Idaho.

Oct. 18, 1972.

Coughlan, Imhoff, Christensen & Lynch, Boise, for defendants-appellants.

Stephen Bistline, Sandpoint, for claimant-respondent.

McQUADE, Chief Justice.

The central issue in this appeal is whether the record supports an interim order of the Industrial Accident Board, requiring the employer and surety to compensate total temporary disability and to provide surgical treatment of an injured hip already subject to a pre-existing infirmity. The case turns entirely on the facts.

The claimant-respondent, Wade S. Clark, was employed in 1964 as the driver of a lift truck for Lewis Lumber Company when a fall on icy steps injured his back and left hip. Claimant's attending physician, Dr. F. E. Marienau, treated him until 1966, when he was referred to Dr. Robert W. Maris, an orthopedic surgeon. Dr. Maris diagnosed claimant's condition in the left hip as "degenerative arthritis," a form of arthritis which grows more acute as the afflicted joint undergoes "wear and tear."

In his prognosis, Dr. Maris stated that the hip would be subject to progressive disability, manifested by symptoms of increased pain and stiffness, which might eventually require surgery if conservative treatment proved ineffective. The claimant, his employer, and the employer's surety, Fireman's Fund Insurance Company, entered into a compensation agreement specifying a permanent partial disability of 20% in the left leg.

Despite this disability the claimant returned to employment as a logging truck driver and mine worker until 1969. Several witnesses subsequently testified before the Industrial Accident Board that the claimant's work during this period required considerable strength and agility. The claimant himself recalled that, although he retained a slight limp in the left leg, he experienced no difficulty performing the physical tasks demanded of him. The symptoms of pain and stiffness diminished, and the claimant ceased to take further medication or to require additional treatment. With respect to his ability to work, claimant reportedly was in "fine shape."

On July 28, 1969, while the claimant was employed by appellants Jack Sage and Vern McCalmont, he fell from a truck and re-injured his left hip. Dr. Marienau treated him with cortisone injections and other pain suppressive drugs, muscle relaxants, and heat applications. However, the painful symptoms worsened until claimant discontinued work and was hospitalized temporarily on December 15, 1969. A claim for compensation was filed with the Industrial Accident Board, supplemented by a petition for an interim order directing the claimant's employers, through their surety, the State Insurance Fund, to compensate total temporary disability and to pay the cost of surgery to alleviate the disabling symptoms.

When the Board conducted its hearings, the claimant was on crutches and taking "25 to 30" pills per day for the pain. Dr. Edward Lester, a colleague of Dr. Maris, testified that re-constructive surgery on the hip was indicated. When examined by counsel for appellants, Dr. Lester stated that surgical treatment was foreseeable when Dr. Maris examined the claimant in 1966. He explained that the arthritic condition of the hip was such that another injury, even though not severe by itself, could cause the hip to become significantly more symptomatic and to remain so permanently, unless treated by surgery. Dr. Marienau essentially concurred in this analysis, testifying that an operation was required now, but that surgery would not have been indicated during the period from 1966 to 1969, when the claimant was relatively symptom-free and able to work. He stated that the present symptoms were "related" to those suffered after the 1964 accident, but that they were caused by the fall on July 28, 1969. Dr. George T. Wallace, an orthopedic surgeon called by appellants, emphasized that the arthritis, which he diagnosed as psoriatic rather than degenerative, was the underlying source of the problem. He then attempted to rate the claimant's disability for work, although his records contained no history of the claimant's employment prior to the second accident. With the limited information available to him, he estimated that the claimant's symptoms were only 10% related to the 1969 injury, the remainder resulting from the arthritis; and that, therefore, the 1969 fall created a 10% permanent partial disability of the whole man.

Upon conclusion of the hearings, the Industrial Accident Board found that the claimant's total temporary disability and need for surgery were the direct results of symptoms caused by the 1969 accident. The Board gave "little weight" to the testimony of Dr. Wallace because it was based on an incomplete understanding of the claimant's work history. Moreover, to the extent that Dr. Wallace attempted to rate the permanent partial disability, his testimony addressed a point not at issue in the hearing on claimant's petition for an interim order. The Board granted claimant's petition and reserved judgment on the

question of permanent partial disability until the effects of surgical treatment could be evaluated.[1]

In their assignments of error, appellants contend that part of the liability for total temporary disability and surgical treatment should have been apportioned to Lewis Lumber Company and Fireman's Fund Insurance Company, the employer and surety involved in the 1964 accident. Accordingly, they submit that these parties should have been joined at the outset of these proceedings, in response to appellants' motion. The joinder issue actually is an appendage of the apportionment issue; for if the Board correctly imposed full liability on appellants, the failure to join other defendants was not prejudicial.

When an industrial accident aggravates a pre-existing infirmity, the employer is liable for that portion of the disability and medical expense causally connected to the accident itself.[2] In this case the Board found that the claimant's total temporary disability and need for surgery were caused by painful symptoms in the hip which resulted, in turn, directly from the 1969 accident. Those findings were based upon uncontroverted evidence showing claimant's recovery from the 1964 accident and his ability to work for several years prior to 1969 despite the arthritic condition of his hip. Moreover, the testifying physicians traced the current disability and need for surgery to the resurgence of symptoms in 1969. The expert opinions supplied by the doctors were advisory in

nature, and assisted the Board's interpretation of the facts.[3] Appellants have failed to establish from the facts any material conflict between the record and the findings of the Board. The findings are supported by substantial, competent evidence, and will not be set aside on appeal.[4]

In Wilson v. Gardner Associated, Inc.,[5] this Court recently reviewed the development of the apportionment doctrine in Idaho and applied it to a set of facts closely resembling those in the case at bar. There, the claimant fell from a truck and aggravated the symptoms of a pre-existing injury from which he had recovered sufficiently to resume full-time employment. We affirmed an interim order entered by the Industrial Accident Board, requiring the employer to compensate the entire total temporary disability and to pay the related medical expenses. We conclude that the facts of the present case compel a similar result.

This conclusion requires us to consider respondent's motion for award of attorney fees on appeal. I.C. § 72–611 provides that such an award may be made in favor of the claimant, in an amount fixed by the Board, if the Board or "any court" determines that the employer or surety contested the claim "without reasonable ground." Whether appellants had reasonable ground to contest respondent's claim before the Board is not at issue on appeal. Respondent's motion calls in question only the appeal itself.[6] Appellants have con-

1. In its order, the Board allowed the employer and surety a credit for $1,750 which they previously sent to claimant after receiving Dr. Wallace's report, apparently in an effort to settle the claim.

2. I.C. §§ 72–307, 72–323. See, e. g., Cook v. Roland T. Romrell Co., 90 Idaho 155, 409 P.2d 104 (1965); Lindskog v. Rosebud Mines, Inc., 84 Idaho 160, 369 P.2d 580 (1962); Cole v. Fruitland Canning Ass'n, 64 Idaho 505, 134 P.2d 603 (1943).

3. Graves v. American Smelting & Refining Co., 87 Idaho 451, 394 P.2d 290 (1964); Nistad v. Winton Lumber Co., 61 Idaho 1, 99 P.2d 52 (1939).

4. IDAHO CONST., art. 5, § 9; I.C. § 72–609; e. g., Johnson v. Boise Cascade Corp., 93 Idaho 107, 456 P.2d 751 (1969).

5. 91 Idaho 496, 426 P.2d 567 (1967); accord, Dawson v. Hartwick, 91 Idaho 561, 428 P.2d 480 (1967).

6. Compare, e. g., Lane v. General Telephone Co. of Northwest, 85 Idaho 111, 376 P.2d 198 (1962); Burch v. Potlatch Forests, 82 Idaho 323, 353 P.2d 1076 (1960); In re Foster, 77 Idaho 26, 287 P.2d 282 (1955). In these cases the motions for attorney fees challenged the grounds for contesting the claims before the Board.

tested the claim before this Court without raising issues of law or of the application of law to the facts as the Board found them. These issues were resolved in the *Wilson* decision, *supra*.[7] Appellants have attacked the Board's findings of fact; but they have failed to identify any material conflict between those findings and the record. This appeal was taken without reasonable ground. Respondent's motion for award of attorney fees on appeal is granted; and the Board is directed to fix the amount in accord with the Advisory Fee Schedule of the Idaho State Bar.

The interim order of the Industrial Accident Board is affirmed. Costs to respondent.

McFADDEN, DONALDSON, SHEPARD, and BAKES, JJ., concur.

7. This case is thus distinguished from In re Hillenbrand, 80 Idaho 468, 333 P.2d 456 (1958), where attorney fees were disallowed because the appellant-employer raised issues of first impression in Idaho.