540 P.2d 1330

Betty Louise **THOM**, Claimant-Respondent,

v.

Mary **CALLAHAN**, dba **Wimpy's Cafe**,
Defendant-Appellant.

No. 11682.

Supreme Court of Idaho.

Sept. 10, 1975.

Frank H. Powell, Coeur d'Alene, for defendant-appellant.

David A. Frazier, Coeur d'Alene, for claimant-respondent.

McQUADE, Chief Justice.

This is an appeal by defendant-appellant Mary Callahan, d/b/a Wimpy's Cafe (employer), from a decision of the State Industrial Commission which found in favor of claimant-respondent Betty Louise Thom. We affirm the order and award of compensation by the Commission to claimant. We also affirm the Commission's award of a penalty and attorney's fees to claimant.

Claimant entered respondent's employ on or about March 1, 1972, with duties as cook, waitress and dishwasher. The Commission found that on March 30, 1972, while lifting and closing an oven door which had slipped off its hinges, claimant sustained a back injury. Based upon claimant's testimony, the Commission found that claimant felt a sudden sharp back pain while closing the oven door, but continued to work until the end of her shift. On the following day, March 31, claimant worked her shift despite a painful "Backache." The next day, April 1, the back pain worsened, with pain extending into claimant's right leg.

On April 4, claimant consulted William T. Wood, M.D., who treated her for a back sprain. The Commission found, in accord with claimant's testimony, that subsequent to Dr. Wood's examination, claimant phoned her employer and informed Mrs. Callahan of the back injury. Dr. Wood referred claimant to Dr. W. H. Slaughter, an orthopedic surgeon. Dr. Slaughter hospitalized claimant on April 7. Claimant was treated with traction and medication until her discharge from the hospital on April 12 following a disagreement between claimant's husband and the attending physician. Claimant's condition had not improved. She was referred to a second orthopedic surgeon, G. W. Bagby, M.D., of Spokane, Washington. On the evening of April 12, Dr. Bagby hospitalized claimant, who was by this time in acute pain. A myelogram showed evidence of disc irregu-

larity. On April 14, Dr. Bagby removed a herniated disc from claimant's back. Claimant was released from the hospital on April 19. Claimant received post-operative treatment from Dr. Bagby until August 1, 1972, at which time Bagby determined she had reached a stable condition.

In answers to interrogatories, which had been propounded by claimant, Dr. Bagby stated his opinion that claimant had made a "[s]atisfactory but not a complete recovery, that is she did not, as expected, return to a normal situation with her back." Dr. Bagby also stated:

"Based upon my examination of the claimant as well as her history, my opinion based on reasonable medical certainty as to the cause of her ruptured intervertebral disk, it is my feeling that the accident here in question was the most significant single factor; most disks have some degeneration leading up to an actual situation of rupture, but this is a very hard to determine with any degree of certainty just what degree of degeneration precedes a rupture in any given case. This lady must have had some however, in view of the fact she had had preceding low back pain and her obese situation would lead to this liklihood (sic) also."

Bagby, in mentioning prior back pain, was referring to pain which arose subsequent to a 1960 automobile accident and which continued intermittently for some time thereafter. While the evidence is conflicting, the Commission found that claimant ". . . had been free from significant pain in her back for a considerable period prior to March 30, 1972."

In response to an interrogatory asking ". . . the percentage of . . . disability as it relates to the whole man . . ." Bagby concluded that in his opinion claimant had a permanent partial disability amounting to twenty percent of the whole person. The Commission found ". . . that the claimant's permanent partial disability caused by the accident of March 30, 1972, is 20% of the whole person." The Commission also found that the injury was sustained in the course of claimant's employment and was covered by the Workmen's Compensation Law, but that the employer had failed to insure or secure her liability for compensation as required under the act.

The Commission awarded claimant $643.-50 as income benefits for total temporary disability for work for eleven weeks beginning April 12, 1972; $123.00 for partial temporary disability while recovering during the five-week period immediately preceding August 1, 1972; $6,490.00 for total income benefits for permanent partial disability; and $278.10 for medical expenses incurred as a result of the injury. Because of its finding that appellant had not "secured" payment of compensation as required by I.C. § 72–301,[1] the Commission also awarded claimant $753.46, as a 10% penalty of the entire amount awarded, plus one-third the amount of the award as attorney's fees ($2,511.53), which the Commission concluded was "reasonable" in this case.[2]

---

1. I.C. § 72–301: *"Security for payment of compensation.*—Every employer shall secure the payment of compensation under this law in one of the following ways:

(1) By insuring and keeping insured with a policy of workmen's compensation insurance as defined by section 41–506(d), Idaho Code, the payment of compensation with any surety authorized by the director of the department of insurance to transact such insurance, provided, that every public employer shall insure its liability for payment of compensation with the state insurance fund unless such fund shall refuse to accept the risk when the application for insurance is made; or

(2) An employer may become self-insured by obtaining the approval of the industrial commission, and by depositing and maintaining with the commission security satisfactory to the commission securing the payment by said employer of compensation according to the terms of this law. Such security may consist of a surety bond or guaranty contract with any company authorized to transact surety insurance in Idaho. . . ."

2. I.C. § 72–210: *"Employer's failure to insure liability.*—If an employer fails to secure

On this appeal, Mrs. Callahan urges two assignments of error. She maintains that the Commission erred: (1) In finding that claimant had sustained a back injury causing a twenty percent permanent disability as it relates to the whole person while in appellant's employ; and (2) in awarding a penalty and attorney's fees.

Appellant's first assignment of error deals with the Commission's finding that claimant sustained an employment-related injury causing a partial permanent disability of twenty percent as it relates to the whole person. Appellant argues that there is a lack of substantial and competent evidence of permanent *impairment* to support the Commission's finding, in that the finding of permanent impairment is based solely on Dr. Bagby's answers to interrogatories. Appellant argues that Dr. Bagby's answer, relating claimant's permanent partial impairment ("disability") at twenty percent of the whole person was in response to a leading question which limited Bagby's response to a rating in accord with the "whole man" concept. She claims that the objection thereto should have been sustained, leaving no evidence on the record in respect to a rating of permanent impairment.

■ The Workmen's Compensation Law contemplates evaluation of permanent impairment in terms of the "whole man," and in terms of impairment of body extremities as provided by the schedule of income benefits found in I.C. § 72–428.[3] For a time prior to the comprehensive recodification of the Workmen's Compensation Law, then I.C. § 72–313 (which contained subject matter corresponding to present I.C. § 72–428), prohibited ". . . the rating of partial permanent disability in terms of specific indemnity comparable to a percentage of total permanent disability *or on the basis of comparable loss of the 'whole man'*." *Griffin v. Potlatch Forests, Inc.*[4] *Griffin* went on to note that former I.C. § 72–313 had been amended subsequent to the time of the accrual of Mr. Griffin's cause of action, to abrogate the above rule of law. The schedule of income benefits found in I.C. § 72–428 does not set out specific percentages of permanent disability for back injuries; and the instant claimant sustained an injury to her back and did not suffer an impairment of an extremity as provided for in that schedule. However, assuming for the sake of argument that the disputed interrogatory was leading, the use of leading questions is within the discretion of the adjudicatory tribunal. Also, this Court has recently made clear the emerging trend in our case law freeing the Industrial Commission from a strict observance of rules of evidence as govern courts of law. We have held that in those areas where the Commission possesses particular expertise, it has the discretionary power to consider reliable, trustworthy evidence having probative value in reaching its decisions, for example, as in the area of the disability rating, even if such evidence would not be ordinarily admissible in a court of law. *Hite v. Kulhenak Building Contractor.*[5]

■ We further note that following the Commission's first hearing on Mrs. Thom's claim, counsel for both parties stipulated

---

payment of compensation as required by this act, an injured employee, or one contracting an occupational disease, or his dependents or lgeal representative in case death results from the injury or disease, may claim compensation under this law and shall be awarded, in addition to compensation, an amount equal to ten per cent (10%) of the total amount of his compensation together with costs, if any, and reasonable attorney's fees if he has retained counsel."

**3.** *See* I.C. § 72–427: *"Permanent impairment evaluation not exclusive.*—The 'whole man'

income benefit evaluation for purposes of computing scheduled and unscheduled permanent impairment shall not be deemed to be exclusive for the purposes of fixing the evaluation of permanent disability."

**4.** 93 Idaho 174, 177, 457 P.2d 413, 416 (1969). See *Arnold v. Splendid Bakery*, 88 Idaho 455, 401 P.2d 271 (1965).

**5.** 96 Idaho 70, 524 P.2d 531 (1974). *See Brooks v. Duncan*, 96 Idaho 579, 532 P.2d 921 (1975); *Duggan v. Potlatch Forests, Inc.*, 92 Idaho 262, 441 P.2d 172 (1968).

". . . that the testimony of Dr. G. W. Bagby . . . may be submitted in the form of Answers to written interrogatories to be filed on behalf of *each* of the parties, . . . (emphasis added)." Dr. Bagby's answers to claimant's interrogatories were admitted into evidence at the Commission's second hearing on Mrs. Thom's claim. At that time appellant's counsel objected to the interrogatory noted above which used the "whole man" concept. Counsel then proceeded to rephrase his objection:

"I would move to, as a matter of law, that the interrogatories do not substantiate any claim for permanent partial disability on the ground that it does not relate to rating to (sic) this injury. That way, we've still got them in there, but the legal effect of them, do they, as a matter of law, support a rating."

The interrogatories and Bagby's answers thereto were admissible in accord with I.C. § 72–709(3)[6] and the stipulation made by counsel.[7] If counsel was of the opinion that Dr. Bagby failed to relate his evaluation solely to the incident of March 30, and failed to separate from that the degree of impairment caused by previous injuries, he had ample opportunity to pose counter interrogatories. The Commission's action in admitting the contested interrogatories was not unfair and did not deprive any party of substantial justice. *Hite v. Kulhenak Building Contractor.*[8]

Appellant further complains that because Bagby, when rating claimant's impairment at twenty percent of the whole person, failed to separate the condition from the impairment caused by the accident, it became incumbent upon the Commission to evaluate and segregate the impairment arising from this accident as may be related to claimant's possible pre-existing back problem. As noted above, when Bagby was asked his opinion, based upon his examination of claimant and her medical history, as to the cause of the ruptured intervertebral disc, he responded that the accident of March 30, ". . . was the most significant single factor; most disks have some degeneration leading up to an actual situation of rupture, *but this is very hard to determine with any degree of certainty just what degree of degeneration precedes a rupture in any given case* (Emphasis added)." Bagby then stated that claimant suffered a permanent physical disability measured as a disability of twenty percent of the entire person.

In its Findings of Fact, the Commission acknowledged back pain arising subsequent to the 1960 accident, but found claimant had not suffered sufficient back pain for a considerable period prior to the March 30th injury. The Commission made note of Bagby's opinion as to the cause of claimant's herniated disc, and his estimate as to claimant's permanent partial disability. The Commission then found that claimant's permanent partial disability was caused by the work related accident of March 30, 1972, and that such disability was twenty percent of the whole person.

The cause or causes of a claimant's disability is a question of fact to be determined by the Commission in light of all the circumstances. The Commission, specializing as it does in administrative fact-finding relating to industrial accident cases, is responsible for determining causative factors on the basis of both medical and non-medical evidence. *Dawson v. Hartwick.*[9] In the instant case, the Commission took into consideration the possible effect of the claimant's previous injury on

---

6. I.C. § 72–709: "*Attendance of witnesses—Production of documents—Deposition—Witness fees.*— . . .
   (3) The testimony of any witness for use as evidence in any proceeding may be taken by deposition or interrogatories."

7. *Cf. Hamlin v. University of Idaho,* 61 Idaho 570, 104 P.2d 625 (1940).

8. *Supra* n. 5.

9. 91 Idaho 561, 428 P.2d 480 (1967). *Accord, Clark v. Brennan Construction Company,* 84 Idaho 384, 372 P.2d 761 (1962); *Walker v. Hogue,* 67 Idaho 484, 185 P.2d 708 (1947).

this disability.[10] Claimant produced evidence indicating that following the 1960 accident, medical examinations failed to uncover a definite medical injury; that she had been employed in several positions prior to the accident of March 30, 1972, without detrimental effect from the 1960 incident and that following the 1960 accident she had suffered back pain, but that she had been free from significant back pain for a considerable time prior to the accident of March 30. We find no error in the Commission's finding that the accident of March 30, 1972, caused claimant to suffer a permanent partial disability to the extent of twenty percent of the whole person.[11] The finding of disability arising from the instant industrial accident is supported by substantial and competent evidence. *Hite v. Kulhenak Building Contractor.*[12]

Appellant next claims that the Commission failed to make an independent rating of claimant's *disability* as opposed to her *impairment.* Appellant claims that the Commission erroneously relied upon Dr. Bagby's rating of claimant's permanent partial "disability" to fix claimant's disability rating.

■ "Permanent impairment" is the physical abnormality or loss caused by or remaining after the industrial accident. Such impairment is a *basic consideration* in the evaluation of permanent disability.[13] Evaluation of "permanent impairment" is a medical appraisal of the effect of the accident-caused loss or impairment on the claimant's day-to-day activities.[14] "Permanent disability," on the other hand, results when the impairment causes a loss or reduction of the claimant's ability to engage in "gainful activity." [15] The evaluation of permanent disability is an appraisal of the claimant's present and future ability to engage in "gainful activity" as it is affected by claimant's permanent impairment and by various non-medical factors.[16]

■ The interrogatory to Dr. Bagby, as framed, asked for an opinion as to the percentage of permanent partial *disability* (disability being a composite evaluation made by the Commission involving both medical and socio-economic factors). Ap-

10. *See Cook v. Roland T. Romrell Company,* 90 Idaho 155, 409 P.2d 104 (1965).

11. *Id. See Clark v. Sage,* 95 Idaho 79, 502 P.2d 323 (1972) ; *Dawson v. Hartwick,* 91 Idaho 561, 428 P.2d 480 (1967).

12. 96 Idaho 70, 524 P.2d 531 (1974). *See* I.C. § 72–724(2) ; *Levesque v. Hi-Boy Meats, Inc.,* 95 Idaho 808, 520 P.2d 549 (1974) ; *Clark v. Sage, supra* n. 11; *Dawson v. Hartwick, supra* n. 11; *Comish v. Simplot Fertilizer Company,* 86 Idaho 79, 383 P.2d 333 (1963).

13. I.C. § 72–422: *"Permanent impairment.—* 'Permanent impairment' is any anatomic or functional abnormality or loss after maximal medical rehabilitation has been achieved and which abnormality or loss, medically, is considered stable or nonprogressive at the time of evaluation. *Permanent impairment is a basic consideration in the evaluation of permanent disability, and is a contributing factor to, but not necessarily an indication of, the entire extent of permanent disability."* (Emphasis added.)

14. I.C. § 72–424: *"Permanent impairment evaluation.—*'Evaluation (rating) of perma-

nent impairment' is a medical appraisal of the nature and extent of the injury or disease as it affects an injured employee's personal efficiency in the activities of daily living, such as self-care, communication, normal living postures, ambulation, elevation, traveling, and nonspecialized activities of bodily members."

15. I.C. § 72–423: *"Permanent disability.—* 'Permanent disability' or 'under a permanent disability' results when the actual or presumed ability to engage in gainful activity is reduced or absent because of permanent impairment and no fundamental or marked change in the future can be reasonably expected."

16. I.C. § 72–425: *"Permanent disability evaluation.—*'Evaluation (rating) of permanent disability' is an appraisal of the injured employee's present and probable future ability to engage in gainful activity as it is affected by the medical factor of permanent impairment and by nonmedical factors, such as age, sex, education, economic and social environment, training and usable skills."* (Emphasis added.)

pellant objected to Bagby's supposed failure to separate the effect of the pre-existing injury from the effect of the industrial accident and further objected that the interrogatory was "leading." No objection was made that Bagby was responding to a question posed on an ultimate issue to be decided by the Commission. There was no error and the interrogatory was properly considered by the Commission.[17] The degree of permanent disability is a factual question committed to the particular expertise of the Industrial Commission. In its findings of fact the Commission noted Dr. Bagby's estimation of permanent partial disability. The Commission then proceeded to find that claimant's permanent partial disability as caused by the accident of March 30, 1972, was twenty percent of the whole person. The Commission's factual evaluation as to the degree of the disability was supported by competent and substantial evidence and will not be disturbed on appeal. *Bottoms v. Pioneer Irrigation District.*[18]

Appellant maintains the Commission erred in awarding a penalty and attorney's fee pursuant to I.C. § 72–210. I.C. § 72–301 requires employers to secure payment of compensation by (1) obtaining workmen's compensation insurance [I.C. § 72–301(1)], or (2) by becoming self-insured by depositing sufficient security with the Commission [I.C. § 72–301(2)]. Appellant claims that the Commission made no specific finding that appellant had failed to secure payment of compensation by the second method noted above and that the award of penalty was erroneous. We must disagree.

In order for an employer to be a self insurer it must provide security of compensation under I.C. § 72–301(2). The employer must gain the Commission's approval and must deposit and maintain sufficient security satisfactory to the Commission. The record is clear that appellant did not have workmen's compensation insurance at the time of the accident. The record indicates that appellant had not provided "secured" compensation by depositing sufficient security with the Commission. The Commission did not err in finding that ". . . the employer had failed to comply with the provisions of Section 72–301, Idaho Code, and did not have insurance or security for her liability under that law."

Appellant argues that the Commission had no basis for allowing a one-third percentage of the award to claimant as attorney's fees under I.C. § 72–210. Appellant's assignment of error goes to the propriety of making an award of penalty and reasonable fees under I.C. § 72–210, and does not, itself, question the reasonableness of those fees.[19] In a case as here presented, the Commission may in the performance of its regular administrative functions, take notice of what constitutes a usual attorney fee.[20] The objection to the award must contain data which controverts such fee allowed by the Commission.

The order and award of compensation of the Industrial Commission is *affirmed.*

Costs to respondent.

McFADDEN, DONALDSON, SHEPARD, and BAKES, JJ., concur.

17. *Cf. Fisher v. Bunker Hill Company,* 96 Idaho 341, 528 P.2d 903 (1974) ; *Hamby v. Simplot Company,* 94 Idaho 794, 498 P.2d 1267 (1972).

18. 95 Idaho 487, 511 P.2d 304 (1973) ; *See Griffin v. Potlatch Forests, Inc.,* 93 Idaho 174, 457 P.2d 413 (1969) ; *Johnson v. Boise Cascade Corporation,* 93 Idaho 107, 456 P.2d 751 (1969). *See generally Madron v. Green Giant Company,* 94 Idaho 747, 497 P.2d 1048 (1972).

19. *See Greenstreet v. Greenstreet,* 65 Idaho 36, 139 P.2d 239 (1943). *See generally* Rule 41(2), Appellate Rules.

20. *Cf. Dykstra v. Dykstra,* 94 Idaho 797, 498 P.2d 1270 (1972).